FANNIE WEININGER AND JACOB BASS, PROSECUTORS, v. BOROUGH OF METUCHEN IN THE COUNTY OF MIDDLESEX, AND HOWARD KROGH, BUILDING INSPECTOR OF SAID BOROUGH, AND HOLGER G. HOLM, RECORDER OF SAID BOROUGH, DEFENDANTS.

Argued orally January 5, 1946—Briefs submitted January 12, 1946—Decided January 22, 1946.

Before Justice CASE, sitting as a single justice pursuant to the statute.

For prosecutors, *Koestler & Koestler* (*Samuel Koestler*).

For the defendants, *John B. Molineux*.

The opinion of the court was delivered by

CASE, J.   The nub of the dispute is whether the following provision of the Borough of Metuchen zoning ordinance is constitutional:

Article IV 1(d) : "An application for a permit for construction of or remodeling to a three or more family dwelling,

apartment house, hotel, hospital, club house, sanitarium, or a cemetery, shall be made first to the Zoning Board of Adjustment who shall hear the application in the same manner and under the same procedure as the Zoning Board of Adjustment is empowered by law and ordinance to hear cases and make exceptions to the provisions of a Zoning Ordinance, and the Zoning Board of Adjustment may thereafter recommend in writing to the Borough Council that a permit be granted, if in its judgment, the said building or cemetery as it is proposed to be located, will not be detrimental to the health, safety and general welfare of the community and is reasonably necessary for the convenience of the community. Whereupon the Borough Council may, by resolution, approve or disapprove such recommendation and in case such recommendation shall be approved, the Zoning Inspector shall issue a permit for such structure or use."

Weininger is the owner of and Bass the contractor for the erection in question. They have begun the building of a low-rental housing project in District "C" a "heavy" manufacturing zone, and have been made defendants in numerous suits by the municipality for failure to obtain the zoning permit required by the ordinance. The only prohibitions set up by the ordinance in District "C" are the manufacture of nitroglycerine and other high explosives, the manufacture of fertilizer from animal substances, the refining of crude oil or petroleum and a trade or industry that is noxious or offensive by reason of the emission of odor or gas. The development instituted by prosecutors consists of three one-story buildings comprising in all twenty three-room units intended to house twenty families. The ordinance nowhere prohibits such a construction or use. It nowhere prohibits the construction of any of the erections enumerated in the quoted section. Further, it does not, except under the conditions named in section 1(d), *supra*, authorize the construction in any zone. In effect it excludes three-family houses except upon (1) the recommendation of the Zoning Board of Adjustment that (a) the particular building will not be detrimental to the health, safety and general welfare and (b) that it is reason-

ably necessary for the convenience of the community and (2) approval by the borough council of such recommendation. Respondents contend that the disputed provision is within the general police powers of a municipality, cite *Schnell* v. *Township Committee*, 120 *N. J. L.* 194, approved by the Court of Errors and Appeals in *First Church* v. *Board of Adjustment*, 128 *Id.* 376, in support of their contention and frankly admit that the ordinance provision is faulty unless it comes within the principle so enunciated. The issue is not made to depend upon the details of the proposed structures beyond the fact that they involve anticipated occupancy by three or more families. The controversy narrows down to the significance of a three-family use and whether that use and pertinent erections may be negatively excluded from all parts of a municipality except upon a successful address by a property owner to the discretion of two municipal bodies.

Prior to the 1927 zoning amendment to our constitution there was much uncertainty about and dissatisfaction with the extent to which municipalities could control the character of structures and uses. The question was how far government could, under its police powers, protect the public welfare by limiting the uses of private property against the will of the owner. The legislature passed chapter 146, *Pamph. L.* 1924, which by its terms gave municipalities the authority *inter alia* "to regulate * * * the location and use of buildings, structures and land for trade, industry, residence or other purposes." But the courts whittled down the effective working of the statute upon the theory that "a legislature cannot confer upon a municipality any power the exercise of which will deprive one of the rights guaranteed him by the constitution." *H. Krumgold & Sons* v. *Mayor, &c., Jersey City* (decided October 19th, 1925), 102 *Id.* 170. See, also, *Ignaciunas* v. *Risley*, 98 *Id.* 712; *State* v. *Nutley*, 99 *Id.* 389; *Frank J. Durkin* v. *Fitzsimmons*, 106 *Id.* 183. It was not seriously disputed that the legislature might authorize and a municipality might enact an ordinance which would so restrict the owner of property as that "within proper limits his use thereof will be controlled for the promotion of

the safety, health, morals or general welfare of the community" (the *Krumgold* case, *supra*), but the "proper limits" as viewed by the courts did not have the scope desired by the public. The opinion of the courts as to constitutional limitations led to the introduction of the zoning amendment at the legislative session next following the Krumgold decision and the incorporation of the same in due course into our fundamental law. That enactment provided (italics inserted) that "The Legislature may enact general laws under which municipalities, other than counties, may adopt zoning ordinances limiting and restricting *to specified districts* and regulating *therein,* buildings and structures, according to their construction, and the nature and extent of their use, and the exercise of such authority shall be deemed to be within the police power of the State. Such laws shall be subject to repeal or alteration by the Legislature." By authority of it the legislature enacted the zoning statute, chapter 274, *Pamph. L.* 1928, which in large part was a re-enactment of the 1924 law, *supra,* and which, following the constitutional language, begins (*R. S.* 40:55–30) : "Any municipality may by ordinance limit and restrict *to specified districts* and may regulate *therein* buildings and structures according to their construction, and the nature and extent of their use," &c. If our decisions which preceded and induced the constitutional amendment were sound and unless the business of adopting an amendment to the constitution and passing enabling legislation thereunder was a useless gesture, the present comprehensive zoning ordinances draw most of their authority, not from ancient and inherent police powers, but from the powers which flowed from the 1927 amendment—distinctly a zoning enactment—as translated into statutory law by the 1928 statute, namely, *R. S.* 40:55–30, *et seq.*

The Schnell decision was upon an ordinance which acknowledged the necessity for gasoline stations but stated that such a use "may be inimical to the public safety and general welfare if located without due consideration of conditions and surroundings," and, therefore, because of this potential menace, required that all applications for permits should be

made first to the Board of Adjustment for recommendation and then, if favorably recommended, to the governing body for final action; with an expressed prohibition, however, against issuing a permit for use in a residence zone. The last mentioned provision was a partial zoning, a prohibition against the use in a residence zone, which has no counterpart in the ordinance now under review. The Court of Errors and Appeals in *First Church* v. *Board of Adjustment, supra,* said of the Schnell case: "The ordinance in *Schnell* v. *Ocean* * * * did not purport to be an exercise of the zoning power but of the general police power to regulate gasoline stations and kindred structures and uses because of their peculiar characteristics." We have it, therefore, both from the Schnell decision itself and from the analytical distinction expressed thereon by our court of last resort that the subject-matter of the ordinance was given its respective treatment because of its allegedly peculiar characteristics and that the ordinance provisions addressed to that potentially inimical use were grounded, not in the zoning power but in the general police power. I am aware that there are cases in our books which tend to accord gasoline stations a proper place in zoning ordinances and I make no issue with them. I am giving the reason why a decision which is cited as a controlling precedent is not in fact such.

The present ordinance deals with dwellings, the sole differentiation between them and other dwellings being that the former are for three or more families. Height, number of stories, size, percentage of lot occupied, location—all these and other regulations and restrictions are specifically within the legislative scheme for an ordinance, but none of them is utilized. Dwelling houses are in an entirely different category from gasoline stations. The authority to prohibit such structures as three-family houses depends, I believe, upon the power to control neighborhood developments drawn from the zoning amendment and the related statute and not upon any inherent danger to the public so obvious as to justify their total exclusion except upon special application and the extended effort set forth in our disputed ordinance. It does

not appear that a three-family dwelling has any such inherent or obvious danger, and the proofs submitted do not show that the Borough of Metuchen has conditions which create an unusual problem. Abstractly, it is said that three families in a house make a heavier load on the public services than is created by one family—produce more sewage, use more water and gas, add more fire hazard, more traffic and parking difficulties. The same may be said of most stores and manufacturing plants; but these uses are provided for and zoned, and the owners are not under compulsion to demonstrate that the uses are reasonably necessary for the convenience of the community. If living quarters, simply because they are equipped for three or more families, are to be removed from the purview of the zoning power, then it would seem that zones have little purpose. Further, I do not understand upon what authority it is made necessary for a property owner to convince the municipal authorities, as is implicit in the ordinance, that a three-family house which he proposes to build is reasonably necessary for the convenience of the community. I consider that the primary function of a zoning ordinance is to regulate structures and uses by zones, and that the public in general and property owners, actual or prospective, in particular have a right to expect that the *status* of properties will normally be established in that fashion. The ordinance under review does not do that with respect to three-family houses, and no reason sufficient to justify the omission is shown.

The Borough of Metuchen has a building code and no violation of it is charged. Prosecutors obtained, and have, a building permit which is not in dispute. The controversy which led up to this proceeding was that the municipal authorities caused the arrest of prosecutors because they undertook to build a dwelling for three or more families without first obtaining a zoning permit as required by the zoning ordinance; to which the prosecutors replied that the zoning ordinance was in that respect unconstitutional.

I conclude that the power of a municipality to determine whether, and where, three-family houses shall be permitted

depends upon the zoning amendment and the zoning statute passed thereunder and that the ordinance provision does not comply with the design of those enactments. Section IV 1(d) will, therefore, in so far as it relates to the subject-matter, be set aside as will also the proceedings brought against the prosecutors herein for violations thereof; with costs.